### In re PAPENFUS.
### Patent Appeal No. 3909.

Court of Customs and Patent Appeals.
Feb. 28, 1938.

Felix A. Russell, of Washington, D. C., and Fred H. Miller, of Los Angeles, Cal., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner rejecting certain claims of appellant's application for patent for a plastic composition.

In the record before us there are ten claims printed as rejected claims in conformity with paragraph 3 of our rule XXVI. These are numbered, respectively, 1 to 4, inclusive, and 7 to 12, inclusive. Two other claims, numbered, respectively, 5 and 6, seem to have been in the case during its prosecution in the Patent Office, but the text of these does not appear anywhere in the record. In the final action of the Examiner it was said: "* * * The rejection of claims 1–4 and 7–12 is repeated and made *final*." In appellant's appeal to the Board it was said: "The applicant hereby appeals * * * from the

decision of the Principal Examiner in finally rejecting *all* the claims in this case." (Italics ours.) The Examiner's statement following the appeal, however, recites: "The applicant appeals from the final rejection of Claims 1 to 4 and 7 to 12. Claims 5 and 6, a non-elected species, are retained in the case pending final disposition of the generic claims."

In the opening paragraph of the decision of the Board it was said, "This is an appeal from the final rejection of Claims 1 to 4, inclusive, and 7 to 12, inclusive," but at a later point in the decision we find the following: "Applicant has included claims 5 and 6 in his appeal. These claims are for a different specific composition than the other specific claims, being directed to the use of a specific phosphate instead of gypsum. While technically, applicant has no right to have these claims considered here, we regard the phosphate as a mere equivalent of the gypsum and a well known fire-proofing agent. There is no disclosure here that the action of the phosphate is critical in any way or that it operates differently than the gypsum except in a manner which is well known in the fireproofing art."

The foregoing amounts to a holding that claims 5 and 6 are, in the opinion of the Board, unpatentable.

The first and second assignments of error in the appeal to us read:

"1. That the Board of Appeals erred in affirming the Examiner in rejecting all the claims, 1 to 12, inclusive, in the case.

"2. That the Board of Appeals erred in not allowing all the claims in the case."

In the brief of the solicitor for the Patent Office it is said: "In appellant's notice of appeal it would appear that claims 5 and 6 were brought before the court. The Board of Appeals pointed out that technically applicant had no right to have these claims considered. The Board of Appeals, however, did consider them and ruled that they were unpatentable. The Board of Appeals having made such a ruling technically, at least, it would therefore appear that appellant would have a right of appeal to the court as to claims 5 and 6. * * *"

The solicitor's brief, however, directs attention to the fact that appellant's brief (there being no appearance before us for oral argument on appellant's behalf) does not quote claims 5 and 6, and makes no reference to them.

It may be added that by permission of the court a reply brief was filed on behalf of appellant, and in this no reference of any nature was made to those claims.

Upon the foregoing state of facts we do not regard claims 5 and 6 as being before us for any character of adjudication, nor do we here express any opinion as to their status.

Our consideration will be confined to claims 1–4 and 7–12.

Claim 1 is illustrative of the subject-matter: "1. A putty-like plastic composition comprising nitrocellulose in solution containing a volatile liquid, finely divided cellulose filler, and a powdered inert filler containing water of crystallization, the filler being of such proportion as to harden upon mere exposure to air to substantially the rigidity or solidity of wood."

The limitations contained in the other claims do not require separate consideration.

The references cited are: Bachrach, 743,422, November 10, 1903; Balke et al., 1,468,222, September 18, 1923; Johnson (Brit.), 296,796, September 10, 1928; Kritchevsky et al., 1,759,907, May 27, 1930; Ellis, 1,784,803, December 9, 1930; Griffiths, 1,838,618, December 29, 1931; Walsh et al., 1,899,542, February 28, 1933.

Appellant's specification states: "In particular, the composition contains an inert, inorganic filler containing water of crystallization which is the fire resistant agent, which, combined with other ingredients, causes the composition to set and harden uniformly and quickly, completely filling the cavities or molds without shrinkage on hardening."

Elsewhere the specification states that the base of the composition consists of a nitrocellulose solution, to which is added a filler consisting in the main of gypsum, or, in place thereof, "calcium ammonium phosphate or any other inert, inorganic filler containing water of crystallization."

In his briefs appellant has placed great emphasis upon the nonshrinking quality of the composition. This quality or characteristic is not mentioned in any of the claims; but in the specification it is said: "It should be noted that gypsum forms the major part of the filler. It is this ingredient that im-

parts the fire-proofing quality to the composition for the reason that the gypsum contains water of crystallization and when subjected to a flame the water being dropped off in the form of steam acts as a fire retarding agent. In addition, gypsum will cause the composition to harden more uniformly and also to prevent the shrinking of the same on hardening, filling completely the molds or recesses filled with the composition."

In discussing the references, the Examiner stated: "Balke et al. are concerned with the making of a vulcanite like material, including nitrocellulose, solvent, plasticizer and filling material which may be gypsum, by mixing in water, kneading until the water is driven off. It is molded at 130° (whether F. or C. is not stated). 'The pressed bodies thus obtained have from the beginning the correct dimensions and maintain the same as they do not shrink at all and need not be dried.' It should be noted that gypsum fuses at 3–3.5, a temperature range which cannot be attained in the Bunsen burner flame. (According to Dana's Manual of Mineralogy, 1929, pages 91, 92, 320 and 321.)"

The examiner also pointed out that Bachrach discloses a plastic composition, "the water of which is retained as water of crystallization" (the feature to which appellant ascribes the result of nonshrinking alleged to have been obtained by him); that Walsh et al., as well as Bachrach and Balke et al., show the use of gypsum; that Ellis, in making a nitrocellulose floor covering, uses calcium sulphate "containing the maximum amount of water of hydration"; and that the respective patents to Griffiths, Kritchevsky et al., and Johnson describe compositions in which various inorganic or organic fillers are incorporated, which compositions "harden to the same physical appearance and similar properties as wood."

In the Board's decision it was said: "The Balke et al., Bachrach and Walsh et al. patents lack the cellulose filler. However, we do not regard the mere use of cellulose filler as novel as it is more or less conventional and applicant lays no stress on this feature which is furthermore shown by Kritchevsky et al. and Griffiths. We believe it is obvious either to add cellulose filler to the Balke et al. composition or to add larger amounts of gypsum to the composition of Griffiths or Kritchevsky et al. * * *"

Appellant filed a petition for rehearing before the Board which was denied for reasons stated in a written opinion. A second petition for rehearing was likewise denied, as was a third, except that in the decision on the third petition the Board withdrew a sentence used in its decision on the second. The sentence is not material here.

From the foregoing recital, it is obvious that appellant's application received very thorough consideration by the tribunals of the Patent Office. No argument has been presented here which was not there presented and considered.

It is conceded, of course, that no one reference of itself meets appellant's claims, but it seems perfectly clear to us that there is sufficient shown in the entire art cited to preclude appellant from claiming invention in his composition. The anticipating elements have been set forth above in less detail than they were in the decisions below, but we deem what we have pointed out sufficient to show that the decisions below as to the claims before us were without error.

The decision of the Board of Appeals as to claims 1 to 4, inclusive, and 7 to 12, inclusive, is affirmed.

Affirmed.